[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The complaint in this matter was returned to this court on August 12, 1992, with a return date of August 25, 1992. The defendant through his attorney filed an answer to the plaintiff's complaint and a counterclaim dated October 3, 1992. The plaintiff then filed an answer to the defendant's counterclaim dated October 6, 1992. CT Page 4679
The only witnesses to testify were the plaintiff and the defendant. The plaintiff, Michael James Brody, testified he had known the defendant, Steven Leninski, for approximately twenty years. Both parties have had a lot of experience in antiques. The defendant's business is buying and selling antiques and other items. He stated his expertise was in American furniture. The plaintiff testified he was not an expert but that he was especially interested in paintings. The issue here involves a needlepoint rug, nine feet by twelve feet, which the plaintiff inherited in 1973. He stated it was a black rug made for the ambassador to Iran. The plaintiff testified that the defendant offered to sell items in his apartment including this needlepoint rug. The plaintiff stated he was in no hurry to sell these items. Finally, the plaintiff agreed to let the defendant sell three items for him. These items are listed on Exhibit A. Exhibit A is a document (Receipt) drawn up by the plaintiff and signed by the defendant. It lists three items with a value set forth next to each item. The items are as follows:
 a) Two water color pictures of Deauville Race Track, France (value $2,500)
 b) One needlepoint rug size approx. 9' x 12' (nine feet by twelve feet) (value $20,000)
 c) Two wall sconces Florentine Blackamoors (value $10,000)
Both parties agree that the plaintiff gave the defendant these items to sell for him on October 24, 1989. The defendant had sold many items for the plaintiff over the years and up to this time, had had a good relationship with him. The plaintiff stated the defendant had seen this needlepoint rug many times in his New York apartment where he had it in his bedroom.
The defendant testified that on October 24, 1989, the plaintiff was in Woodbury, Connecticut, and called him at his home in Guilford, Connecticut, and asked him for a ride to his New York City apartment. The defendant obliged the plaintiff and drove him to said New York City apartment. He testified he saw the subject rug for the first time in the plaintiff's bedroom that day. The defendant stated that the plaintiff felt the value of the rug was $30,000.00, but that both parties agreed the value was $20,000.00 on October 24, 1989. However, the defendant stated that did not CT Page 4680 mean he could sell said rug for $20,000.00. Subsequently, the defendant returned the two water colored pictures and two wall sconces to the plaintiff, as he did not sell them. The plaintiff testified that in approximately December 1989, the defendant told him he sold the subject rug. The plaintiff testified that the defendant told him that he did not have the money yet, but that you will be surprised at how good I did for you. The plaintiff stated he asked the defendant how much he received for the rug and the defendant said "don't worry, you'll be satisfied."
The defendant testified that approximately six months passed and he called the plaintiff and stated he could sell the subject rug for $3,000.00. He stated that the plaintiff said nothing, so he sold the rug for the said $3,000.00.
The plaintiff testified that the usual commission in such a sale is ten (10%) per cent. The defendant said the usual commission is ten (10%) to twenty (20%) per cent for such sales. However, over the years, these parties had an arrangement whereby when the defendant sold items for the plaintiff, he would give other items to the plaintiff in lieu of a commission. In other words, the items given to the plaintiff by the defendant would be of less value than the item(s) of the plaintiff that the defendant had sold for him. These items were always agreed on by the parties and in this way, the defendant was paid his commission.
After hearing the evidence, the court finds the issues for the plaintiff on his complaint. There is no plausible reason why the amount of $20,000.00 is written on the receipt (Exhibit A) unless it was the intent of the parties that that was the amount for which the defendant could sell said rug.
As to the defendant's counterclaim, the court finds the issues for the defendant on the first count and for the plaintiff on the second count.
Therefore, the court awards the plaintiff damages of Twenty Thousand ($20,000.00) Dollars on the complaint, to be paid by the defendant. As to the first count of the defendant's counterclaim the court awards the defendant Two Thousand ($2,000.00) Dollars as a commission on the sale of said rug to be paid by the plaintiff. This sum shall be deducted from the amount due from the defendant to the plaintiff hereunder. Therefore, the court finds that the net amount due to the plaintiff from the defendant is Eighteen Thousand ($18,000.00) Dollars plus costs of suit. CT Page 4681
While the court realizes the defendant did not sell said rug for $20,000.00, that is the amount the court considered when awarding the defendant damages (commission) on the first count of the counterclaim. That is the amount that the defendant should have received for said rug or he should not have sold it. Equity requires that the defendant be awarded a commission in money under the facts of this case.
Judgment may enter accordingly.
/s/ William J. Sullivan, J. WILLIAM J. SULLIVAN